IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3222-BO

| | | |
|---|---|---|
| QUINCY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| D. DANIELS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The matter now comes before the court on defendants' motion for summary judgment (DE 41) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed, and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On September 15, 2017, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. On April 16, 2018, the court allowed plaintiff to proceed with his Eighth Amendment excessive force claim against defendants Maury Correctional Institution ("Maury") Superintendent Dennis Daniels ("Daniels"), Sergeant Stephen Fonville ("Fonville"), and Maury Assistant Superintendent of Programs Timothy Jones ("Jones"). North Carolina Prisoner Legal Services ("NCPLS") subsequently conducted discovery on plaintiff's behalf pursuant to this court's standing order 17-SO-03, and withdrew as counsel for plaintiff after discovery was complete.

On July 17, 2019, defendants moved for summary judgment arguing that plaintiff is unable to establish a constitutional violation, and, alternatively, assert the affirmative defense of qualified immunity. In support of their motion, defendants filed an appendix which included their personal

declarations, as well as two incident reports and North Carolina Department of Public Safety's ("DPS") Offender Information relevant to plaintiff. Plaintiff responded, and attached a "statement of disputed factual issues," a "statement in opposition," photographs, witness statements, a grievance response, diagrams, excerpts from DPS policies, the DPS code of ethics, an employment record for defendant Fonville, and medical records.

## STATEMENT OF FACTS

Except as where otherwise noted below, the undisputed facts are as follows. This action arose out of a sequence of events which occurred at Maury Correctional Institution ("Maury") on April 9, 2017. (Compl. pp. 5-6). At approximately 5:10 p.m., plaintiff and another inmate, Emmanuel Burney ("Burney"), attacked and assaulted Maury Correctional Officer Anthony Dixon ("Dixon") while Dixon was conducting rounds in Maury's Green Unit A-Pod. (Daniels Decl. ¶ 6 and Ex. A). In the course of the assault, plaintiff struck Officer Dixon in the head with a homemade weapon causing injury to Dixon. ((DE 46-2), p. 15; Compl. p. 5). Both plaintiff and inmate Burney, additionally, incited other inmates, as well as provoked and threatened staff. ((DE 46-2), p. 3). The inmates on the Green Unit were not immediately compliant with orders to "lock down," and the responding officers deployed a short burst of pepper spray to disperse the crowd of inmates. (Id.) The correctional officers ultimately regained control of the unit, and plaintiff was restrained and allowed to decontaminate. ((DE 46-2), p. 4). Officer Dixon was transported to Vidant Hospital in Greenville, North Carolina for treatment. (Id. pp. 5, 10).

At approximately 6:20 p.m. that same day, defendant Fonville and Officer Brounson escorted plaintiff, while in handcuffs, to the office of Maury's Assistant Superintendent for Custody and Operations to be interviewed in connection with the stabbing of Officer Dixon. (Daniels Decl. ¶ 7;

2

(DE 46-3), p. 6). Defendants Daniels and Jones were present in the office when plaintiff arrived, and Daniels instructed plaintiff to sit in a chair. (Daniels Decl. ¶ 8; Jones Decl. ¶¶ 10-11). At this point, the parties' version of events differ. According to defendants, plaintiff moved forward out of his chair in an aggressive manner. (Daniels Decl. ¶ 9). In response, defendant Daniels placed a baton across plaintiff's chest, and applied pressure in order to restrain plaintiff in a seated position in the chair. (Id. ¶ 11). Defendants state that plaintiff then continued to be aggressive and combative. (Id. ¶ 12). Plaintiff, however, states that he did not show any resistence, but that the officers threatened to kill him and to knock his teeth out with their batons because plaintiff stabbed Officer Dixon. (Compl. p. 5; Pl.'s Resp. Ex. A, p. 2).

At one point, plaintiff, a suspected member of the United Blood Nation ("UBN") gang, uttered the phrase "Pretty Tony," which is a term UBN members use to show defiance or as a rallying cry. (Fonville Decl.¶ 13; Jones Decl. ¶ 15; Compl. p. 5; Pl.'s Resp. Ex. A, p. 2). Although plaintiff admits that he used the term "Pretty Tony" in the course of the interview, he states that it was in response to the officers' inquiry as to whether plaintiff was a UBN member.[1] (Compl. p. 5; Pl.'s Resp. Ex. A, p. 2). Defendants, however, state that plaintiff shouted the phrase while in an agitated state and leaping forward out of his chair. (Daniels and Fonville Decl. ¶¶ 12-13; Jones Decl. ¶¶ 14-15). Jones then used the heel of his hand to strike the left side of plaintiff's brachial plexus–a DPS approved defensive technique.[2] (Fonville Decl. ¶ 14; Daniels Decl. ¶ 14; Jones Decl. ¶ 16). According to defendants, there was no further use of force once Jones used the compliance

---

[1] Plaintiff states that he is "Pretty Tony," but not a member of the UBN. (Pl's Resp. Ex. A, p. 2).

[2] Defendant Jones states that this is an approved technique, as part of "Control, Restraint and Defensive Techniques training," designed to temporarily incapacitate a target. (Jones Decl. ¶ 16).

3

technique. (Daniels Decl. ¶ 16; Fonville Decl. ¶ 15; Jones Decl. ¶ 17). Plaintiff, however, states that defendants Daniels and Jones continued to "beat [him] with a baton, and punched, and assaulted [him] while [he was] handcuffed and seated in a chair." (Compl. pp. 5-6; Pl.'s Resp. Ex. A, p. 2). Notably, however, plaintiff suggests that defendants should have deployed pepper-spray as a first level of response to the disruption in the office. (Pl.'s Resp. p. 3).

Following the incident, plaintiff was assessed by Maury's medical staff. ((DE 46-3), p. 3). Plaintiff denied any injury, but the nurse noted that plaintiff's left eye was bruised and discolored. (Id.) When the nurse asked plaintiff about his eye, plaintiff attributed the injury to an earlier fall and did not mention the alleged assault during his medical screening. ((DE 46-3), p. 9; (DE 46-3), p. 4). The only medical-related complaint plaintiff made at that time concerned nausea, for which he refused treatment. (Id.) No other injuries were observed by medical staff. (Id.)

The next day, plaintiff was transferred to Central Prison and examined by medical staff. (Pl.'s Resp. Ex. C). Central Prison's medical staff ordered a CT scan of plaintiff's left eye socket, which revealed no break or fracture. (Pl.'s Resp. Ex. C). After examining plaintiff, the physician at Central Prison made the following notation in plaintiff's medical records: "22 yr old male sent to at Central State Prison Urgent Care today for L orbit pain and swelling. Pt states he was involved in an altercation and stabbed an officer. During the altercation he suffered trauma to his L eye. Pt. states that he fell. I think this is very unlikely and much more likely that he was struck in the eye during his scuffle." (Id.)

4

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

1.  Excessive Force Related Claims

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The

5

excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, a plaintiff must establish that the forced used was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). "In a claim for excessive application of force, a prisoner must meet a heavy burden to satisfy the subjective component–that prison officials applied force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain and restore discipline." Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (citing Whitley, 475 U.S. at 320-21). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. .

Applying the Whitley factors, defendants Daniels and Jones applied force in a good faith effort to protect themselves and to control plaintiff–an aggressive suspected UBN-affiliated inmate who had just stabbed Officer Dixon with a homemade weapon. The use of force was brief, minor, tailored to gain plaintiff's compliance, and terminated once that compliance was achieved. While the parties dispute whether plaintiff was acting in an aggressive manner during the interview, plaintiff's own versions of events are inconsistent, and unsupported by the record. For instance, while plaintiff denies acting aggressively in the course of the interview, he suggests that defendants should have deployed pepper-spray as a first level of response. (Pl.'s Resp. p. 3). Moreover, plaintiff admits that he uttered the UBN gang phrase "Pretty Tony," which is consistent with defendants' version of events and the incident report. (Compl. p. 5; Pl's Resp. Ex. A, p. 2). Finally, plaintiff's medical records from both Maury and Central Prison reflect that plaintiff, himself,

6

attributed his eye injury to a prior fall, and not the April 9, 2017, incident with Daniels and Jones, which calls into question whether plaintiff suffered any injury at all in the office. ((DE 46-3), p. 3; Pl's Resp. Ex. C). Even if plaintiff received the bruised eye in the office, the de minimis nature of plaintiff's injury indicates that the amount of force used was applied in a good faith effort to maintain order or restore discipline. McMillian v. LeConey, No. 5:09-cv-175-BR, 2011 WL 2144628, at *10 (E.D.N.C. May 31, 2011), aff'd, 455 F. App'x 295 (4th Cir. 2011).

Here, plaintiff simply has not produced sufficient evidence to defeat summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007) (where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment); see also, Solomon v. Felker, No. 08-cv-2544, 2015 WL 1469165, at 7 (E.D. Cal. Mar. 27, 2015) ("The factual context of plaintiff's claim of excessive force is implausible because the injuries described in plaintiff's medical records do not support his claim that he was beaten."); Lanier v. Smith, No. 3:08-cv-833, 2009 WL 3853170, at *8 (M.D. Fla. Nov. 18, 2009) (stating that "the medical evidence is consistent with the amount of force Defendants allege they used to restrain Plaintiff and restore order and is inconsistent with Plaintiff's allegations"). Based upon the foregoing, each of the Whitley factors weighs in favor of defendants Daniels and Jones, and the court finds that defendants Daniels and Jones did not act with wantonness in the infliction of pain, and that they are entitled to qualified immunity as to plaintiff's excessive force claim. Thus, the court GRANTS summary judgment as to defendants Daniels and Jones for this claim.

Plaintiff's Eighth Amendment claim against defendant Fonville is predicated upon a theory of failure to protect. Given the fact that there is no underlying Eighth Amendment violation on

7

behalf of defendants Daniels or Jones, plaintiff's failure to protect claim based upon the alleged Eighth Amendment violation of defendants Daniels and Jones lacks merit. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor). Because there is no constitutional violation, defendant Fonville is entitled to qualified immunity for this claim.

2.  Remaining Claims

To the extent plaintiff asserts that defendants violated any DPS policy, alleged prison policy violations do not rise to the level of a constitutional violation. See Joyner v. Patterson, No.0:13-2675, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Violations of prison policies alone do not rise to the level of a constitutional deprivation."), aff'd, 579 F. App'x 748 (4th Cir. 2015). Thus, plaintiff has not established a constitutional violation, and this claim is DISMISSED. See 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that a court to dismiss a prisoner's complaint *sua sponte* at any time "if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted.").

To the extent plaintiff asserts that defendants failed to provide him with a video tape of the alleged April 9, 2017, incident in the office, plaintiff acknowledges that the alleged incident took place in an area not equipped with video surveillance. See (Pl.'s Resp. p. 2). In any event, plaintiff had the opportunity to pursue any discovery issues through his counsel, NCPLS, during the discovery period. Thus, this claim is DISMISSED. See 28 U.S.C. § 1915(e)(2)(B)(i)(ii).

Finally, to the extent plaintiff asserts that defendants violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment in the course of his disciplinary proceedings because prison officials did not take photographs after the alleged use of force in the office, plaintiff fails to

state a claim. In order to recover damages for an allegedly unconstitutional conviction, a plaintiff proceeding pursuant to § 1983 must prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-487 (1994); Mobley v. Tompkins, 473 F. App'x 337, 337 (4th Cir. 2012). The holding in Heck also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). Plaintiff, additionally, fails to state a due process violation. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). Thus, this claim is DISMISSED. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment (DE 41) is GRANTED as to plaintiff's excessive force-related claims. Plaintiff's remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)(ii). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20 day of February, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
Chief United States District Judge